UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:14cr362 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| MARK S. FARMER, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On July 17, 2015, the Court conducted a final pretrial conference and a hearing on the motions in limine filed by the government (*see* Doc. No. 59 ["Gov. First Mot. in Limine"]) and defendant Mark Farmer (*see* Doc. Nos. 60, 61, 62, 67, 71). At the conclusion of the hearing, the Court announced its ruling on these then-pending motions on the record. Subsequent to the July 17, 2015 motion hearing, the government filed two additional motions in limine. (Doc. No. 80 ["Gov. Second Mot. in Limine"]; Doc. No. 84 ["Gov. Third Mot. in Limine"].) Defendant filed oppositions to these motions. (Doc. No. 83 ["Opp'n to Second Mot. in Limine"]; Doc. No. 85 ["Opp'n to Third Mot. in Limine"].) This Memorandum Opinion shall address one of the issues raised in the government's second motion in limine: whether the government shall be permitted to have two case agents present in the courtroom during the trial. The remaining issues raised in these latest two in limine motions shall be addressed in a hearing to take place immediately after jury selection on August 7, 2015.

I. **BACKGROUND**

Farmer was charged on October 9, 2014 by indictment with conspiracy to commit mail fraud, wire fraud and theft of government property, as well as related substantive offenses. (Doc. No. 1 [Indictment].) The charges stemmed from a larger FBI investigation into public corruption in Cuyahoga County, Ohio. The indictment charges that Farmer and another individual, William Montague, conspired to exchange non-public information for money and property. Specifically, Farmer was alleged to have hired Montague, a public employee, to provide Farmer's company with insider information that would assist Farmer in securing government contracts for his company.

II. **STANDARD OF REVIEW**

Although not explicitly authorized by the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, the practice of ruling on motions in limine "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and to allow the parties to focus remaining preparation time on issues that will in fact be considered by the jury. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). In limine rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

III. **TWO CASE AGENTS IN THE COURTROOM AT TRIAL**

On July 17, 2015, defendant moved in open court to sequester witnesses

pursuant to Fed. R. Evid. 615. After the motion was granted, the government requested that it be permitted to have two government agents present in the courtroom throughout the trial. The government has, pursuant to Fed. R. Evid. 615(b), designated FBI Special Agent Kirk Spielmaker as the government's representative present at counsel table. In addition to SA Spielmaker, the government requests that it be permitted to have VA OIG Special Agent Todd Springer sit at counsel table, pursuant to Fed. R. Evid. 615(c), on the ground that it can demonstrate that SA Springer's presence is "essential to the presentation of the" government's case.

> Federal Rule of Evidence 615 provides, in relevant part:
>
> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding: . . . . (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; and (c) a person whose presence a party shows to be essential to presenting the party's claim or defense . . . .

The Court has already explored this issue fully in an earlier case arising out of the same FBI Investigation. (*See United States vs. Dimora, et al*., Case No. 1:10cr387, Doc. No. 602, at 12675-84.) At the last motion hearing on July 17, 2015, the Court provided defense counsel with a copy of the Court's opinion in the *Dimora* case. Because counsel and the parties are familiar with the Court's treatment of this issue in *Dimora*, it will not repeat the analysis in its entirety. For the present purposes, it is sufficient to note two points under Sixth Circuit law: (1) "[C]ertain prosecutions may be complex enough that the aid of more than one law enforcement officer is needed to sort through extensive, technical evidence, and to help 'map out strategy.'" *United States v. Phibbs*, 999 F.2d 1053, 1072 (6th Cir. 1993) (quoting *United States v. Martin*, 920 F.2d

3

393, 397 (6th Cir. 1990)); and (2) though the burden of demonstrating that a witness is "essential" is "no easy task" and must be balanced against a criminal defendant's interest in discouraging collusion and fabrication of testimony, the decision to permit a witness to remain in the courtroom is within the sound discretion of the trial court. *Phibbs*, 999 F.2d at 1073; s*ee United States v. Reynolds*, 534 F. App'x 347, 365 (6th Cir. 2013) (decision to exclude agent from sequestration order is reviewed "for abuse of discretion") (citing *United States v. Ashraf*, 628 F.3d 813, 826 (6th Cir. 2011); *see also United States v. Pulley*, 922 F.2d 1283, 1286 (6th Cir. 1991) ("When the government wants to have two agent-witnesses in attendance throughout the trial, it is always free to designate one agent as its representative . . . and try to show . . . that the presence of the second agent is 'essential' to the presentation of its case.")

In support of its request, the government cites the extensive eight year investigation underlying this and related prosecutions, the multiple terabytes of discovery, and anticipated voluminous documentary exhibits, summary charts, large demonstrative aids, and large rebuttal exhibits. It also notes that it requires two agents who are thoroughly familiar with the investigation and the exhibits to streamline the presentation of the government's case, that the testimony of these witnesses is not likely to overlap, and that there is precedent in the same investigation (namely, *Dimora*) for its request. More specifically, the government argues, in part, that:

> Due to the large volume of exhibits in this case, one agent will be responsible for the organization and presentation of its paper exhibits and another dedicated to the electronic presentation of exhibits. SA Springer served as one of the two primary case agents assigned to this complex investigation. He prepared the electronic and hard copy exhibits, organized the exhibits, and is most familiar with the exhibits and the operations of the litigation software that presents the exhibits.

4

(Gov. Second Mot. in Limine at 660.)

Defendant objects to this procedure. He insists that this case is materially distinguishable from *Dimora* in that there are fewer defendants, fewer chargers, the charged conspiracy is less complex, and the trial is expected to be much shorter than *Dimora*. In support of his position that the government has failed to demonstrate a need for two agents at counsel table, defendant cites *United States v. Farnham*, 791 F.2d 331 (4th Cir. 1986). *Farnham* is readily distinguishable. There, the defendant was indicted on charges of making false declarations to a grand jury in violation of 18 U.S.C. § 1623. The testimony at trial concerned whether the defendant made certain statements to the two agents, who were permitted to sit at counsel table throughout the trial. Both agents testified to this same subject, and, as the Fourth Circuit observed, "Farnham's conviction on [the charge of making false declarations] "turned exclusively on the relative credibility of the defendant on the one hand and the [testifying agents] on the other." 791 F.2d at 334.  Given the potential for "collusion or tailoring of testimony" by the agents, the court held that the trial court erred "in refusing to sequester [the second agent], if not during the entire trial, at least during the testimony of his colleague." *Id.* at 334-35.

The differences between this case and *Farnham* are numerous and significant. Initially, in *Farnham*, there was no discussion that the two-day trial involving an indictment with only a few counts of the same charge was complex or involved a sizeable record. Indeed, the defendant's grand jury testimony at issue spanned a mere 43 pages. *Id*. at 337. In contrast, the present case—involving a 23-count indictment charging

violations of multiple federal statutes—is expected to last approximately three weeks,[1] and the government and the defense have identified a combined thirty-nine potential witnesses that could testify during their respective cases-in-chief.

Moreover, discovery has been extensive and has involved thousands of documents, requiring the Court, on two separate occasions, to declare the case complex and grant defendant two lengthy continuances. While defendant makes much of the fact that the record is not as extensive as *Dimora*, his own statements in support of his requests for continuances demonstrate that this case is complex and the record is sizable. (*See, e.g.,* Doc. No. 44, Mot. to Continue, at 276) [defendant represented to the Court that "[discovery] productions were sizable and, to date, the Government has provided 63.8 gigabytes of discovery materials, *which is an exceptionally large amount of documents and discovery*"; and *id.* [in the same motion, defendant referred to the government's earlier document production on November 19, 2014 as "containing massive PDFs, making analysis exceedingly time-sensitive and difficult…."] (emphasis added)).

Finally, while there was considerable overlap in the testimony of the two agents in *Farnham*, making it exceptionally easy for the second agent who testified to tailor his testimony after the first's, here, the government has represented that there will be no overlap in testimony, as each agent is expected to testify on different subjects. In fact, the government has represented that SA Springer's testimony is not likely to overlap

---

[1] In his opposition brief, defendant represents that "this case is projected to last only one week." (Opp'n to Second Mot. in Limine at 706.) The Court is unaware of any projection that the case would only last one week; rather, the parties have consistently represented to the Court that the trial is expected to last three weeks. Indeed, as recently as July 10, 2015, the parties represented in jointly proposed voir dire that "the case is expected to take 3 weeks to present the evidence to [the jury] . . . ." (Doc. No. 69 [Joint Voir Dire] at 552.)

with any government witness. As an added precaution (and as explained below), the Court will require SA Springer to excuse himself from the courtroom during SA Spielmaker's testimony, unless he testifies before SA Spielmaker takes the stand. Thus, the concern for collusion and tailoring of testimony that was the focal point of the decision in *Farnham* will not be an issue in this trial.

The present case is much more akin to *Phipps* than *Farnham*. In *Phipps*, the Sixth Circuit approved of the practice of permitting two case agents to be present during a trial that was expect to last one month, and the two agents were "responsible for distinct aspects of a far-flung investigation." *Phipps*, 999 F.2d at 1073 (internal footnote omitted). The present case also grew out of an expansive federal investigation, has involved extensive discovery, and is likely to involve a substantial number of exhibits and witnesses. Additionally, the government has represented that the testimony of the two agents is not likely to overlap. While the *Dimora* case was *exceptionally complex* and may have presented an *even more compelling* case than the *Phipps* case did, the Court finds that the present case is at least as compelling as the case in *Phipps*. Thus, the Court finds that the government has met its burden of demonstrating that SA Springer's presence is essential to the government's presentation of its case. *See, e.g., United States v. Cooper*, 283 F. Supp. 2d 1215, 1226 (D. Kan. 2003) (permitting two agents to remain in the courtroom during "document-intensive and complex" trial involving "numerous witnesses and exhibits," where the second agent was needed to manage evidence, assist with electronic presentation, and advice on trial strategy, and his testimony was not likely to overlap with other agent's testimony).

To further reduce the risk of prejudice to defendant, the Court will not

permit SA Springer to remain in the courtroom during any portion of SA Spielmaker's testimony—or during any portion of testimony by any other government witness which is likely to overlap with SA Springer's testimony—unless SA Springer's testimony precedes that testimony. The Court believes that this restriction is necessary to safeguard the fact-finding process and will further insure defendant's interest in the accurate and fair presentation of testimony at trial. Subject to this restriction, the Court will permit SA Springer to be present in the courtroom during trial.

**IT IS SO ORDERED**.

Dated: August 5, 2015

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**